**TEXAS GENERAL INDEMNITY COMPANY, Appellant,**

v.

**Richard N. WATSON, Appellee.**

**No. 2–82–188–CV.**

Court of Appeals of Texas, Fort Worth.

July 21, 1983.

Rehearing Denied Sept. 8, 1983.

H.C. McCracken, Jr., Carrollton, for appellant.

Jerry A. Pusch, Jr., Houston, for appellee.

Before HUGHES, JORDAN and BURDOCK, JJ.

## OPINION

JORDAN, Justice.

This is an appeal by Texas General Indemnity Company in a worker's compensation case complaining of a ruling of the trial court on its motion for new trial based on alleged acts of jury misconduct.

We reverse and remand.

Appellee Watson was, prior to November 9, 1977, a truck driver for Red Ball Motor Freight, Inc., and on that date, while in the scope and course of his employment, was injured in a truck-automobile accident. The driver of the automobile was killed. Watson sued Texas General claiming total and permanent incapacity. Trial was to a jury, which found plaintiff received an injury on November 9, 1977 which produced total incapacity from November 14, 1977 through October 3, 1978 and permanent partial incapacity beginning October 4, 1978. The jury also found plaintiff's average weekly earning capacity during partial incapacity to be $250.00 per week and found plaintiff's medical expenses to be $5,332.30. Judgment was entered on this verdict for appellee in the amount of $30,799.00.

Texas General timely filed its motion for new trial based on several acts of jury misconduct, discussed later herein, and after a full hearing, the trial court found that "some jury misconduct did occur ...", but that it was not material and did not injure or harm appellant.

The appeal is based on two points of error: (1) that the trial court erred in overruling appellant's motion for new trial because the acts of jury misconduct were material and probably did result in injury to the defendant; and (2) that the jury's finding of $250.00 per week earning capacity during partial incapacity was against the great weight and preponderance of the evidence.

The jury returned a ten to two jury verdict. The verdict was signed by the ten jurors who agreed and was not signed by jurors Poole and Mary Ann Knox, who did not agree with the verdict.

Most of the jury misconduct was alleged by appellant to have been caused by a vocal and persuasive juror, a Mr. Lewis. The most serious act of jury misconduct which occurred in this case was the refusal, upon advice of Mr. Lewis and possibly the fore-

**614**

man, Mr. Daniel, to allow Mrs. Poole and Mary Ann Knox to deliberate and participate in the discussion of other jury issues after each of them voted, in answer to different special issues, in a negative manner and contrary to the majority of the jurors.

According to the testimony of three of the jurors, Mrs. Poole, after she voted "no" to issue no. 2, inquiring as to whether Watson suffered any total incapacity, was told by Mr. Lewis that she was "out of the voting" and could not further participate in the discussion of or voting on the remaining issues. The same jurors testified that after juror Knox disagreed with the remaining jurors on the answer of "Permanent" to issue no. 3B, inquiring as to the ending date of partial incapacity, she also was told by at least Lewis, and perhaps the foreman, that she, too, was "out of the voting", and would not be allowed to have any further input or voice in the remaining issues.

As a result of this obvious misconduct, Mrs. Poole was not allowed to have any voice whatever, in the remaining issues, which inquired about the beginning and ending date of total incapacity, whether there was any partial incapacity, and if so, when it began and when it ended, the average weekly earning capacity of appellee during partial incapacity, or whether or not a previous injury had contributed to Watson's present incapacity, and if so, the percentage of such contribution.

Juror Mary Ann Knox would not vote for an answer of permanent to issue no. 3B, inquiring of the duration of partial incapacity, so she thereafter was excluded from any consideration or decision on the answers to that question as well as to issues inquiring about Watson's average weekly earning capacity during partial incapacity, and whether or not the prior injury suffered by Watson contributed to his present incapacity, and if so, the percentage of such contribution.

Other acts of jury misconduct alleged by appellant involved discussions of personal experiences by the vociferous Mr. Lewis, who operated a truck repair business, numerous discussions by Mr. Lewis and the foreman to the effect that the jury needed to agree on the answer to issue no. 3b, inquiring as to the ending date of partial incapacity, and all other issues, so as to save the taxpayers the expense of another trial. There was also discussion, again by the helpful Mr. Lewis, as to the average weekly wage of nonunion truck drivers, which Watson was after the injury of November 9, 1977, and some conversation by several of the jurors about the amount it would take per week to support a family. None of these matters were the subject of any evidence during the trial.

Six of the twelve jurors testified at the hearing on the motion for new trial, and while some of their testimony conflicted, the trial court found that "some of the jury misconduct did occur". The trial judge did not specify which of the above mentioned acts constituted jury misconduct and we assume, for our purposes, and we believe from the evidence, that most, if not all, of those acts did constitute jury misconduct.

The foreman and Mr. Lewis testified that all of the jurors agreed that after one juror voted "no" to any issue, that they were "out of the voting" and could no longer participate as jurors. Juror Knox specifically denied any such agreement by the jury. Most of the other jurors, or at least three of them, testified that this action was taken as a result of instructions of Mr. Lewis and the jury foreman. Three of the jurors also testified that at no time was the glib Mr. Lewis told not to mention such matters, and while other jurors disputed that testimony, we think that the finding of the trial court that misconduct did occur makes that conflict in the juror's testimony meaningless.

Juror Sloan, called by appellee at the hearing on the motion for new trial, admitted that jurors Poole and Knox were prohibited from participating in the discussion and voting on remaining issues after they voted contrary to the other ten jurors. She said Lewis and the foreman of the jury set this policy, which, according to Sloan, they got from the "rules" or instructions given them by the court.

We think it is clear from the testimony of the majority of the jurors who testified at the hearing that this policy of prohibiting the two women jurors from further discussion and voting on remaining issues after they each had voted in a manner contrary to ten of the jurors was instigated by the loquacious Mr. Lewis and the jury foreman. However, it makes no difference whether that was the case or whether that policy was set by agreement of all jurors. That policy, which effectively eliminated two of the twelve jurors from full participation in the jury deliberations violates the very essence and spirit of the jury system and deprived the parties of a full and fair trial by jury.

Tex.R.Civ.P. 327 governs the granting of new trials for jury misconduct. It provides in pertinent part:

> Where the ground of the motion is misconduct of the jury . . . the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, . . . material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party.

Thus, to show entitlement to a new trial, the moving party must establish (1) that misconduct occurred; (2) that it was material misconduct; and (3) that based on the record as a whole, the misconduct probably resulted in harm to that party. *Strange v. Treasure City,* 608 S.W.2d 604 (Tex.1980); *Fountain v. Ferguson,* 441 S.W.2d 506 (Tex.1969), *cert. denied,* 396 U.S. 959, 90 S.Ct. 433, 24 L.Ed.2d 424; *Flores v. Dosher,* 622 S.W.2d 573 (Tex.1981); Keltner, *Jury Misconduct in Texas: Trying the Trier of Fact,* 34 S.W.L.J. 1131, 1136 (1980).

Whether the jury misconduct has occurred is a question of fact to be determined by the trial judge, and if there is conflicting evidence on this issue, the finding of the trial court is binding on appellate review. *Strange v. Treasure City, supra.* Once it has been determined that an act or acts of misconduct have occurred, as is the case here, the inquiry turns to the question of materiality and probable injury. The question of materiality and harm, once misconduct has been established, is one of law, first for the trial court, and on review for the appellate court. *Baucum v. Statewide Hot Shot,* 550 S.W.2d 156 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Lewis v. Yaggi,* 584 S.W.2d 487 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.); *Fountain v. Ferguson, supra.*

In applying this test, it is necessary for us to consider the entire record as a whole. The term "record as a whole" has been broadly construed to include "any and all other parts of the record which may throw light on the question of injury." *Barrington v. Duncan,* 140 Tex. 510, 169 S.W.2d 462, 464 (Tex.1943); *Fountain v. Ferguson, supra.* The term includes matters disclosed by the evidence heard on the trial on the merits as well as the motion for new trial. *Motley v. Mielsch,* 145 Tex. 557, 200 S.W.2d 622 (Tex.1947); *Fountain v. Ferguson, supra.* In determining this question of harm or injury we are limited to considering only the overt acts of the jury and must disregard testimony, if any, as to their mental processes. *Trousdale v. Texas & New Orleans Railroad Co.,* 154 Tex. 231, 276 S.W.2d 242 (Tex.1955); Keltner, *supra.*

We have reviewed the entire record in this case, including the transcript, the statement of facts containing the trial testimony, and the testimony of six jurors on the hearing on the motion for new trial. The record of the trial reveals a somewhat typical worker's compensation case, meaning that the testimony on the nature and seriousness of the injury, the extent of total and/or partial incapacity, and the average weekly earning capacity during partial incapacity was conflicting and hotly contested. The evidence revealed that appellee was injured on November 9, 1977 in a truck-automobile collision in which the driver of the automobile was killed. He sustained only contusions and lacerations, and no fractures or other bone injuries.

He did, according to a psychiatrist, suffer "severe mood depression" as a result of the death of the driver of the automobile. However, the testimony of an orthopedic surgeon revealed that in 1975 Watson suffered a severe on-the-job injury while working for Red Ball Motor Freight. As a result of this injury he sustained serious cervical injuries, resulting, in early 1977, in a cervical spinal fusion and an arthrodesis of the fourth and fifth cervical vertebra. Also, in October of 1975, following that first on the job injury, he had a resection of the right first rib.

This evidence raised hotly disputed issues on the extent of his incapacity from the 1977 injury, as well as to the contribution to his present incapacity of the 1975 injury. This, then, was the state of the evidence as the jury began its deliberations, before two of the jurors were excluded from full participation in jury deliberations.

Considering the effect of the undisputed exclusion of two of the jurors from further deliberations, after negative or contrary votes, we think it is clear from this record that these two jurors were prevented, primarily because of one juror with past jury experience who had acquired some erroneous and strange ideas about jury deliberations, from having any input or opinions based on the evidence on several questions in the court's charge which were vital to appellant's cause.

Our jury system is based on the premise that contested issues in a lawsuit will be heard, considered, discussed and voted on by all members of the jury, not ten out of twelve. Members of a jury are obliged to hear and consider with due respect the opinions of one another and to agree with a verdict, according to the instructions of the court. *Indemnity Insurance Co. v. Williams,* 69 S.W.2d 519 (Tex.Civ.App.—Beaumont 1934), *rev'd on other grounds,* 129 Tex. 51, 99 S.W.2d 905 (Tex.Comm'n App. 1937, opinion adopted). It has been said that a verdict should result from reason, deliberation, and honest conviction, rather than from surmise and guesswork. *Phoenix Refining Co. v. Powell,* 251 S.W.2d 892 (Tex.Civ.App.—San Antonio 1952, writ ref'd n.r.e.).

It is the duty of a jury to arrive at a verdict, according to the instructions given by the court, if they can reasonably do so, and where there are differences of opinion among the jurors as to the evidence and its weight, where such evidence is conflicting, unless the jurors, by careful consideration of the evidence and the opinions of their fellow jurors, agree or compose their difference, there never could be a verdict rendered. Neither the law nor good public policy forbids such agreement, and it is well settled that such compromise verdict is proper and lawful. *Indemnity Insurance Co. v. Williams, supra.*

In this case, appellant was entitled to have the benefit of the opinions and votes, based on the evidence, of the two excluded jurors. Neither Mrs. Poole or Mary Ann Knox were permitted to give their views or permitted to attempt to argue and persuade other jurors to their views on several vital issues.

It is true that under Tex.R.Civ.P. 292 ten of the twelve jurors may return a verdict, providing the same ten jurors concur on all of the answers in the court's charge. The standard jury instruction, promulgated by the Supreme Court and embodied in Tex.R. Civ.P. 226a tells the jury that ten of the twelve may return a verdict, if the same ten agree on all issues, but it also tells the jury "You will not, therefore, enter into an agreement to be bound by a majority or any vote of less than ten jurors." Such rule certainly does not sanction or contemplate in any way the exclusion from further deliberations of any juror who happens to disagree with a majority.

Since rule 226a was only promulgated in 1973, there are apparently no cases in Texas exactly in point with or controlling of the situation we find in this case. In fact, this writer, after many years experience in trying jury cases as a lawyer and trial judge, has never heard of a similar case. We have, however, found one case containing language, although it is dictum, which we think is applicable here. That language is

found in *Jones v. Square Deal Cab Company,* 506 S.W.2d 855 (Tex.1974), where appellant attempted to impeach a unanimous verdict, signed by the jury foreman, by showing that the verdict was reached by only ten jurors, and that those ten jurors were not the same ones voting on each issue. The Supreme Court held that since the verdict was signed and returned as a unanimous verdict, and accepted by all the jurors, it could not be impeached. The court went on to say, however:

> It does not follow that jury misconduct could not be proved to impeach a verdict under different circumstances. *For example, if the jurors agreed in advance to let any ten votes determine the answers to the issues as each were taken up and voted upon, in disregard of the rules and their instructions, the verdict would be subject to impeachment....* [Emphasis added.]

*Jones v. Square Deal Cab Company, supra,* at 856. It is important to note that in the instant case, the verdict was not unanimous, and the two excluded jurors neither signed nor accepted the verdict.

We hold that the exclusion of the two jurors following a vote on a certain issue was jury misconduct, as the trial court found, that it was material and probably caused injury to appellant.

Next, we consider the other acts of jury misconduct, found by the trial court, to determine whether the cumulative effect of these acts of jury misconduct resulted in probable injury to appellant. It has been previously noted that juror Lewis recounted personal experiences of his with regard to truck drivers and the nature of their work, as well as the effect of injuries on them. It has also been mentioned that Lewis told the jurors the average weekly wage for non-union truck drivers, such as appellee Watson was at the time of trial. Moreover, there was discussion of the cost to the taxpayers of a new trial if they did not arrive at a verdict, and there was also testimony from several jurors at the new trial hearing that it was believed that the average cost of supporting a family at the time in question

was $250.00 per week, which was the amount they answered in response to issue no. 3C, inquiring as to Watson's average weekly earning capacity during partial incapacity.

Lewis admitted, on the hearing on the motion for new trial, that he told the jury the wage scale for nonunion truck drivers was six or seven dollars per hour, and that that was how the jury arrived at the figure of $250.00 per week in answer to issue no. 3C.

Considering the record as a whole, we conclude that probable injury to appellant, as a result of these last mentioned acts of misconduct, as well as the exclusion of the two jurors from full consideration and deliberations on the jury verdict, did occur. *Strange v. Treasure City, supra.*

We sustain appellant's first point of error and overrule the second.

The judgment is reversed and the cause remanded for new trial.