**Steven W. WILLIAMS and Gaines Insulation Company, Inc., Appellants,**

v.

**Sally GAINES, Appellee.**

**No. 07–96–0156–CV.**

Court of Appeals of Texas, Amarillo.

April 4, 1997.

Rehearing Overruled May 6, 1997.

**186**

Gibson Ochsner & Adkins, L.L.P., David L. LeBas, S. Tom Morris, Amarillo, for appellants.

Law Offices of Jack B. Cowley, P.C., Jack B. Cowley, Rockwall, for appellee.

Before BOYD, C.J., REAVIS, J., and REYNOLDS, Senior Justice.*

*ON MOTIONS FOR REHEARING*

REAVIS, Justice.

On original submission, we reversed the judgment of the trial court and remanded the cause. Both appellants and appellee have filed motions for rehearing. We overrule both motions, but withdraw our original opinion of February 21, 1997 and, in lieu thereof, issue the following opinion, and expressing our rationale underlying our judgment.

Contending by eleven points of error that there was no or insufficient evidence to support the jury's findings and the resulting judgment in favor of Sally Gaines (Ms. Gaines), and that no sustainable cause of action can be supported by the recorded evidence, appellants Steven W. Williams (Williams) and Gaines Insulation Company, Inc. (Gaines Insulation) have perfected this appeal. Based upon the rationale and authorities expressed herein, we reverse and remand.

### FACTUAL BACKGROUND

Upon graduation from high school in 1971, Ms. Gaines undertook employment as a secretary for Young Sales Corporation, a well-established commercial insulation company. Ms. Gaines progressed through the ranks of the company and, in 1989, was named president of a newly reorganized division of the

---

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1997).

company, Young Insulation Group in Amarillo, Inc. (YIG–Amarillo). In 1991, YIG–Amarillo was profitable. In 1992, it was less profitable, and in the first seven months of 1993, it experienced a loss of $22,000. Despite the acquisition by YIG–Amarillo of new contracts (the YIG contracts), Young Sales Corporation management decided to cease YIG–Amarillo's operations, and notified Ms. Gaines of their decision on August 18, 1993.

Believing the YIG contracts to have a gross value of approximately $1,000,000, and a net profitability of between $150,000 and $200,000, Ms. Gaines sought, and obtained, permission from Young Sales Corporation to utilize the YIG contracts for her own benefit. Additionally, Young Sales Corporation gave Ms. Gaines certain equipment and personal property to use as she saw fit (the personal property). However, because of time limitations and insufficient resources, she was unable to proceed entirely on her own to set up a new company, and sought out other companies and individuals in the construction and insulation industry for financial backing.

Initially, Ms. Gaines contacted Wylie Hicks and one of his two sons, James Hicks. After they made an evaluation, they proposed to form a new company with the three Hickses and Ms. Gaines being equal owners, and Ms. Gaines would be the president. Ms. Gaines also contacted Williams of Borger, Texas. Although she seriously considered the Hickses proposal, she decided to go into business with Williams, because she considered his offer of 50% ownership to be a better opportunity, and she and Williams proceeded upon their oral agreement. Ms. Gaines made the necessary contacts with YIG–Amarillo to effect the transfer of YIG contracts and Williams handled other "start-up" matters and caused the charter for the corporation to be issued.

Williams made substantial loans for start up capital to form Gaines Insulation as a Texas corporation. He set up the corporation naming himself as the only director and stockholder, and elected Ms. Gaines as a salaried president. Gaines Insulation began operations on October 11, 1993, servicing the YIG contracts, utilizing the telephone number previously assigned YIG–Amarillo and

the personal property. On November 23, 1993, Williams met Ms. Gaines at a cellular telephone establishment where she left her car to have a telephone installed, and while Williams was driving Ms. Gaines to her home, Williams told Ms. Gaines that her employment and status as president was terminated.

## LITIGATION

Believing that she owned one-half of Gaines Insulation stock, Ms. Gaines then went to the office and retrieved job files and other books and records. Seeking to preserve the company's files, Williams filed an application for a temporary restraining order and temporary and permanent injunctions. The temporary relief was granted, but was later segregated from the cause before us, and is not at issue here.

Gaines Insulation and Williams filed a supplemental petition seeking a declaratory judgment that Williams was the sole owner of Gaines Insulation. Ms. Gaines responded with a general denial; a cross-claim against Williams for breach of an agreement, wrongful termination, breach of an employment agreement, breach of a profits agreement, and fraud; and a third party action against Service Engineering Repair Company, Inc. (SERCO), alleging Williams's actions were imputed to SERCO since he was its sole owner.

Gaines Insulation, Williams and SERCO answered that: the statute of frauds defeated Gaines's action for breach of any agreement to sell stock; she was an employee at will of the company; and her only cause of action, if any, sounded in contract not in tort. After presentation of evidence to the jury, the motion for instructed verdict of SERCO was granted because there was no evidence to show Williams's actions were imputed to SERCO. The instructed verdict is not attacked by this appeal, and SERCO is not a party to, nor affected by, these proceedings.

Ms. Gaines testified that her agreement with Williams was that she provide or furnish to the newly formed company, Gaines Insulation, the YIG contracts, the telephone number associated with YIG–Amarillo, and the

personal property. She would receive a base annual salary of $47,000, a car allowance, 50% of the Gaines Insulation stock, and 50% of the net proceeds. She believed Williams used her surname because she was a vital part of the infant company. Although Ms. Gaines made notations in her personal calendar summarizing the terms, no written documentation memorialized the agreement.

Williams's testimony varied considerably from Ms. Gaines's. He stated that he owned 100% of the Gaines Insulation stock, and he never intended to issue any stock to Ms. Gaines. He contended that the YIG contracts were transferred directly to Gaines Insulation. The reason he named the company for Ms. Gaines was to "stroke her ego" and elicit her commitment so Gaines Insulation could obtain the YIG contracts; he did not deem her to be vital to the success of Gaines Insulation.

Upon receiving this evidence and testimony from other fact witnesses and experts who testified as to the value of the Gaines Insulation stock, the jury made the following affirmative findings:

Q. 1 Ms. Gaines and Williams agreed that one-half of the stock in Gaines Insulation would be issued to Ms. Gaines.

Q. 1–A Williams breached that agreement.

Q. 1–C Ms. Gaines and Williams agreed that the consideration for the issuance of 50% of the stock to Ms. Gaines was the transfer of the YIG telephone number and the YIG contracts to Gaines Insulation.

Q. 2 Williams committed common law fraud in failing to issue one-half of the stock to Ms. Gaines.

Q. 3 Williams committed statutory fraud in failing to issue one-half of the stock to Ms. Gaines.

Q. 4 Ms. Gaines and Williams agreed she would receive one-half of the net profits of Gaines Insulation.

Q. 4–A Williams breached this agreement by failing to pay Ms. Gaines one-half of the net profits of Gaines Insulation.

Q. 6 A fiduciary relationship existed

& 6–A between Ms. Gaines and Williams in connection with the issuance of the stock, and Williams breached that duty.

Conditioned upon their findings, the jury determined that: the fair market value of one-half of the Gaines Insulation stock on November 23, 1993 was $92,500; $92,500 would compensate Ms. Gaines for Williams's common law fraud; $92,500 would compensate Ms. Gaines for Williams's statutory fraud; $92,500 would compensate Ms. Gaines for damages resulting from Williams's breach of fiduciary duty; one-half of the net profits of Gaines Insulation from October 11, 1993 through the date of the trial (November 2, 1995) was $222,097.74; and Ms. Gaines was entitled to $100,000 for attorney's fees for preparation and trial, $25,000 for an appeal to this Court, and $15,000 for an appeal to the Supreme Court of Texas. Upon a separate charge in the bifurcated trial, the jury found that $150,000 should be assessed against Williams as exemplary damages to Ms. Gaines.

The parties agreed there was no evidence to support the jury's finding of $222,097.74 as one-half of the net profits, and no award was made to Ms. Gaines upon that finding. Judgment was rendered on the remainder of the jury's verdict, and provided for a single recovery to Ms. Gaines of $92,500 in actual damages, $150,000 in exemplary damages, attorney's fees in accordance with the jury's verdict, and the delivery of the personal property to Ms. Gaines. The judgment provided that Gaines Insulation and Williams take nothing by their suit against Ms. Gaines, and that Williams and Gaines Insulation pay all costs. It is from this judgment Williams and Gaines Insulation have perfected this appeal by eleven points of error.

## POINTS OF ERROR

By their seventh point of error, Williams and Gaines Insulation assign error to the trial court in rendering judgment for Ms. Gaines on any of her claims since all were predicated upon the formation of an agreement between Ms. Gaines and Williams to convey stock, and there was no or insufficient evidence to support the finding that such an agreement was formed. Initially, Williams

and Gaines assign error to the rendition of judgment on her claims of (1) breach of contract, (2) statutory fraud, and (3) breach of fiduciary duty, since the evidence was completely lacking or factually insufficient to support the underlying findings of the jury that the value of one-half of the Gaines Insulation stock on November 23, 1993 was $92,500. By their fourth and fifth points of error, they contend Ms. Gaines's cause of action for common law fraud must fail since there was no or insufficient evidence (4) to support the finding that $92,500 was the value of the telephone number and the YIG contracts, or (5) of out of pocket loss. By their eighth point of error, they contend the trial court erred in rendering judgment upon Ms. Gaines's claim of breach of fiduciary duty, since there was no or insufficient evidence to show the existence of a confidential, special or formal fiduciary relationship between Ms. Gaines and Williams. By their sixth point of error, they contend that the trial court erred in rendering judgment for Ms. Gaines since all of her claims were predicated upon the formation of an oral agreement to convey stock, and such is barred by the statute of frauds.[1]

Predicated upon our sustaining the foregoing contentions of error assigned to the award of actual damages, Williams and Gaines contend by their ninth point of error that the award of exemplary damages was made in error since: (a) no sustainable theory of recovery can support the award; (b) recovery for breach of contract will not support such a recovery; and (c) the damages awarded for statutory fraud and breach of fiduciary duty are based upon a contract measure of damages and will not support such an award. Similarly, they contend by their tenth point of error that the award of attorney's fees is not supported by a sustainable theory of recovery. Finally, they contend the trial court erred in rendering judgment that they deliver the personal property to Ms. Gaines since there is no evidence to support the rendition.

1. References herein to the statute of frauds are to Texas Business & Commerce Code Annotated section 8.319 (Vernon 1991).

## STATUTE OF FRAUDS

■ We first consider the sixth point of error that the trial court erred in rendering judgment on any of Ms. Gaines's claims because they were all predicated upon the alleged formation of an oral agreement between her and Williams for the sale of stock, which, they contend, is barred by the statute of frauds provision in section 8.319 of the Business and Commerce Code.[2] As pertinent here, the statute of frauds provides that a contract for the sale of securities is not enforceable unless the agreement is reduced to writing. It is undisputed that the agreement between Williams and Gaines was never reduced to writing and did not involve real estate.

Ms. Gaines testified as to her agreement with Williams before the incorporation of Gaines Insulation on October 11, 1993 to the effect that she and Williams would commence business through a corporation and they would be equal stockholders. Williams stated that he caused the corporation to be organized with himself as the only director and shareholder and that he never intended to issue any stock to Ms. Gaines. He did acknowledge however that Ms. Gaines might have the opportunity to buy some stock.

By their answers to questions 1 through 1–C, the jury affirmatively found that Ms. Gaines and Williams agreed that one-half of the stock of the corporation would be issued to Ms. Gaines, that Williams breached the agreement; that the fair market value of one-half of the stock was $92,500.00; that the consideration for the issuance of one-half of the stock to Ms. Gaines was the transfer of the right to the YIG–Amarillo telephone number to the corporation; and the consent of YIG–Amarillo to the acquisition of the existing contract rights. Thus, the jury determined that Ms. Gaines and Williams made a pre-incorporation agreement to conduct business through a corporate structure and

2. Williams does not contend that the statute of frauds as set forth in section 26.01 of the Business and Commerce Code applies, and the application of that section is not presented as an issue before us.

that one-half of the stock would be issued to Ms. Gaines.

The general law of contracts applies to pre-incorporation agreements. *St. Regis Candies, Inc. v. Hovas*, 117 Tex. 313, 3 S.W.2d 429, 433 (1928), and *Morris v. Leonard*, 441 S.W.2d 877, 881 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n.r.e.). Thus, the question presented for determination here is whether the statute of frauds bars enforcement of the oral agreement which, among other things, contemplated the formation of a corporation and the issuance of one-half of its stock to Ms. Gaines.

Section 8.319 deals with the "sale of securities." The terms certified security and uncertified security are defined to be "a share, participation, or other interest in property or an enterprise of the issuer. . . ." Thus, under the definition of the term "security," the property or enterprise must exist before the statute of frauds is applicable. Therefore, an agreement to create an enterprise (corporation in this instance), is not, by definition of the term a "security," subject to the statute of frauds.

Moreover, the statute of frauds does not apply to all agreements involving stock or securities. In *Young v. Fontenot*, 888 S.W.2d 238 (Tex.App.—El Paso 1994, writ denied), the court held that an agreement for an employee to receive stock in trust of a corporation to be formed in consideration for services was not barred by the statute of frauds. In *Bowers Steel, Inc. v. DeBrooke*, 557 S.W.2d 369 (Tex.App.—San Antonio 1977, no writ), noting no prior Texas authority and citing *Baldassarre v. Singer*, 444 Pa. 100, 282 A.2d 262 (1971), the Court held that an oral contract of employment for which the consideration is to be corporate stock was not unenforceable by section 8.319. Similarly, an agreement for the joint acquisition of land is not a contract for the sale of land, and is not subject to the general statute of frauds. *MacDonald v. Sanders*, 207 S.W.2d 155 (Tex. Civ.App.—Texarkana 1947, writ ref'd n.r.e.) We have determined that *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739 (Tex.App.—Houston [14th Dist.] 1992, writ denied), is not applicable because of factual differences in the oral agreements, and because in *Beta,*

the employee sought to recover under an exception to the statute of frauds, and did not dispute, but rather acquiesced, to the applicability of its provisions.

Furthermore, question No. 1 asked the jury to determine if Ms. Gaines and Williams agreed that one-half of the stock of the corporation "would be issued" to Ms Gaines. Williams made no objection to question No. 1. Also, question No. 1–C required the jury to determine the consideration for the "issuance of" one-half of the stock to Ms. Gaines. Williams did not object to the term "issuance" or "issue" and did not request any definition or instruction for those terms. Therefore, any claim that the term "issue" or "issuance" is synonymous with the term "sale" under the statute of frauds is not before us for review. Tex.R.Civ.P. 274; Tex. R.App.P. 74; *Jefferson County Drainage Dist. No. 6 v. Lower Neches Valley Authority*, 876 S.W.2d 940, 956 (Tex.App.—Beaumont 1994, writ denied). The sixth point of error is overruled.

### SUFFICIENCY OF EVIDENCE TO SUPPORT DAMAGE AWARDS

We next consider Gaines Insulation's and Williams's multi-point contentions that the evidence is legally and factually insufficient to support the jury's findings of $92,500 as damages for each of Ms. Gaines's claims. The consideration invokes the appropriate standards of review.

#### Standards of Review

In our examination of the contentions of a lack of evidence, we must review the entire record to determine whether there is more than a scintilla of evidence to support the findings, *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965), and if so, the findings will be upheld. *Stedman v. Georgetown S. & L. Ass'n*, 595 S.W.2d 486, 488 (Tex.1979). Evidence is merely a scintilla when it is so weak as to do nothing more than create a mere surmise or suspicion of a fact. *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752, 755 (Tex.1970). We must consider only the evidence and the reasonable inferences which can be drawn therefrom in their most favorable light to support the jury's findings while

disregarding all contrary evidence and inferences. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993).

If there is some evidence to support the findings, we must then determine its factual sufficiency. In so doing, we must consider and weigh all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex. 1985). Each of the evidentiary complaints herein will be evaluated utilizing these standards of review.

### Fair Market Value of YIG Contracts and Telephone Number

Upon their finding that Williams committed common law fraud, the jury awarded Ms. Gaines $92,500. Per the instruction given, in making this determination, the jury was to determine the "fair market value" on October 11, 1993, of the telephone number and the YIG contracts.

■ Wylie and James Hicks both testified that based upon their review of the YIG contracts and their business experience, the contracts had an expected gross profit of between $150,000 and $200,000. Neither expressed an opinion as to the fair market value of the YIG contracts, nor as to the telephone number.

Robert Wayne Johnson, a certified public accountant hired by Ms. Gaines to determine the fair market value of the Gaines Insulation stock, testified as an expert witness. Although he never looked at the YIG contracts, based upon conversations with the Hickses, Johnson expressed his opinion as to the fair market value of the stock on November 23, 1993. However, he did not express any opinion as to the fair market value of the YIG contracts or the telephone number on October 11, 1993. Although there was testimony concerning the gross and net profitability of the YIG contracts, there were no opinions of their fair market value.

Applying the applicable standards of review to the recorded evidence, there was not even a scintilla of evidence concerning the fair market value of the telephone number and the YIG contracts on October 11, 1993. Even if the evidence of the gross or net profitability of the YIG contracts is deemed as some evidence, as Ms. Gaines submits, it is insufficient to support a finding that the fair market value of the YIG contracts and telephone number on October 11, 1993 was $92,500.

We sustain the fourth point of error that there is no evidence to support the jury's award of $92,500 as recovery for common law fraud. This disposition pretermits a discussion of the fifth point of error that there was no evidence of Ms. Gaines's out-of-pocket loss to support the award for common law fraud. Tex.R.App.P. 90(a).

### Fair Market Value of the Gaines Insulation Stock

■ In regard to the value of the Gaines Insulation stock, Williams and Gaines Insulation contend that the award of $92,500 for recovery on Ms. Gaines's contract claim was erroneous because there is no or insufficient evidence to support the finding that the value of one-half of the Gaines Insulation stock on November 23, 1993. At the outset, we note that the jury awarded the same damages amount as recovery for Ms. Gaines's contract, breach of fiduciary duty, and common law and statutory fraud claims. She elected to recover in tort, since that recovery, as opposed to one for breach of contract, allowed her to recover the exemplary damages. *Texas Nat'l Bank v. Karnes,* 717 S.W.2d 901, 903 (Tex.1986). Because the judgment award was not based upon Ms. Gaines's recovery on her contract claim, discussions of Williams's and Gaines Insulation's first point of error is pretermitted. Tex.R.App.P. 90(a).

However, Williams and Gaines Insulation make identical contentions under their second and third points of error contesting the damages awarded as recovery for Ms. Gaines's claims of statutory fraud and breach of fiduciary duty. Thus, we must review the record to determine whether there is sufficient evidence presented to support the jury's determination of $92,500 as the value of one-half of the Gaines Insulation stock on November 23, 1993. By instruction No. 2,

"fair market value" was defined as "the amount of money for which property could be sold by a person desiring to sell the property, but under no duress to sell, to another person desiring to buy the property, but under no compulsion to buy, **with each party being fully aware of existing circumstances.**" (emphasis added). Neither party objected to the instruction.

Ms. Gaines directs us to Johnson's testimony to support the findings. Johnson testified that he never examined the YIG contracts, nor the estimated net profit projections for the contracts, rather, he conducted a "smell test" to determine the value. He conceded that Gaines Insulation was in debt and its liabilities "were greatly in excess of its assets" on November 23, 1993. Notwithstanding, Johnson expressed his expert opinion that the fair market value of the 1,000 shares of stock in Gaines Insulation on November 23, 1993 was $618,000, thus, one-half the value of the stock would be $309,000.

Johnson stated that the asset method and the earnings method are the two recognized methods to determine fair market value. He based his opinion on the earnings method, which he stated was the method most appropriate for determining value since Gaines Insulation was a service company, and not the type of business which would be asset intensive and subject to the asset method. In so doing, he used the records of cash flow commencing October 1993 through the end of the first fiscal year of Gaines Insulation, made adjustments which he deemed appropriate, imputed the data into a computer, and developed the fair market value of $618,000. Because Gaines Insulation had been in operation for such a short time, the data was based upon only seven months of income and operations. For these seven months, Johnson stated that the data showed a net profit of $101,754, but, in his opinion, the net profit should have been $147,754.

The end of the fiscal year was May 31, 1997. Johnson conceded that on November 23, 1993, the figures and data he utilized would not have been available to a potential buyer or seller, and that the book value of Gaines Insulation on November 23, 1993 was less than zero. Gaines Insulation and Williams submit that Johnson created an "artificial earning stream by hindsight," and that it is not a proper measure of damages, thus, there is no evidence of the proper measure of damages to support the jury's awards. Gaines Insulation and Williams did not object to Johnson's testimony, rather, they opted to present controverting expert testimony.

Gaines Insulation and Williams presented expert testimony from Jordan Mills, a certified public accountant. Mills based his opinion on the book value of Gaines Insulation, and opined that it was less than zero. Mills stated that without a history of earnings, the income or earnings method was inappropriate in making a valuation. Utilizing the net asset valuation method, he opined that as of November 23, 1993, the fair market value of the Gaines Insulation stock was a deficit of $52,000, and as of May 31, 1994, the fair market value of one-half of the stock was $51,500, based upon income and expense figures for the seven months after Gaines Insulation began operations in October of 1993.

Upon presentation of the question to be submitted to the jury concerning the fair market value of the stock as of November 23, 1993, Gaines Insulation and Williams objected that "value is not determined by what future profits might be made," and that the "only evidence in the case that (they) can even make an argument from, is that those— there might have been some profit in (the YIG contracts) and that is not market value as a matter of law." We will, in the interest of justice, read the objection to comport with the appellate complaint that there is no evidence, or insufficient evidence, to support the jury's findings of $92,500 as the fair market value of one-half of the Gaines Insulation stock on November 23, 1993.

Gaines Insulation was a fledgling, closely held corporation, and there was no market for its stock. *Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex.1966). No sales of its stock having been shown, there was no evidence of a market value of its stock by sales. The book value is entitled to little, if any, weight in determining the value of its corporate stock. *Citizens National Bank of Lubbock v. Maxey*, 461 S.W.2d 138, 141 (Tex.Civ.

App.—Amarillo 1970, writ ref'd n.r.e.). Ordinarily, in the absence of sales showing a market value, the value of the stock is predicated upon the market value of the assets of the company after deducting its liabilities. *Id.*; *Southwestern Bell Telephone Co. v. Wilson,* 768 S.W.2d 755, 762 (Tex.App.—Corpus Christi 1988, writ ref'd n.r.e.).

Johnson did not testify regarding the predicted market value of the assets of the company after deducting its liabilities; rather, he focused on the earnings method. Mills testified concerning the net asset value, which he set at a negative $52,000.

Without probative evidence to support them, the jury's findings may not stand. This is so, even if there is some evidence, but it is determined to be incompetent, hearsay or otherwise. *Texas Co. v. Lee,* 138 Tex. 167, 157 S.W.2d 628, 631 (1941). Under Rule 279, Tex.R.Civ.Proc., a claim that the evidence was legally or factually insufficient to support the submission of a jury question may be made for the first time after verdict. Opinion evidence based on conjecture or speculation lacks probative value. *Golleher v. Herrera,* 651 S.W.2d 329 (Tex.App.—Amarillo 1983, no writ). Incompetent evidence, even if not objected to at trial, may not be considered as probative in determining the legal and factual sufficiency of the evidence. *Missouri Pacific R. Co. v. Buenrostro,* 853 S.W.2d 66 (Tex.App.—San Antonio 1993, writ denied); *Matter of Marriage of Rutland,* 729 S.W.2d 923, 932–33 (Tex.App.—Dallas 1987, writ ref'd n.r.e.); *and see Dallas Ry. & Terminal Co. v. Bankston,* 51 S.W.2d 304, 309 (Tex.Com.App.1932); *Henry v. Phillips,* 105 Tex. 459, 151 S.W. 533, 538 (1912). Probative evidence is evidence which serves to prove the asserted proposition, and it must be more than a surmise or suspicion. *Bailey County Appraisal Dist. v. Smallwood,* 848 S.W.2d 822, 825 (Tex.App.—Amarillo 1993, no writ).

Because the data relied upon by Ms. Gaines to support the jury's award is based on subsequent data, there was no probative evidence of the fair market value of one-half of the Gaines Insulation stock on November 23, 1993, taking into account the "existing circumstances," as the jury was instructed.

*See Leitch v. Hornsby,* 935 S.W.2d 114 (Tex. 1996). But, even if the opinion of Johnson, an expert witness utilizing the "income" method, albeit based primarily, if not entirely, upon business transacted after November 23, 1993, is considered as some evidence of the value of the stock on November 23, 1993, it is factually insufficient to support the finding that the value of one-half of the stock was $92,500.00 on November 23, 1993. Further, even if the testimony concerning the gross value of the YIG contracts is considered as some probative evidence of the value of the company, such is factually insufficient to support the jury's finding of $92,500 as one-half of the value of the stock on November 23, 1993. This is so, because the jury was not provided with any firm evidence regarding the profitability of the YIG contracts, and was instead left to surmise or guess as to what the earnings might be, and this they cannot do. *Texas General Indemnity Co. v. Watson,* 656 S.W.2d 612, 616 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.).

■ The evidence presented did not meet the definition of fair market value given in the jury's instructions, without objection. This being so, there is no probative evidence which might enable the fact finder to determine the actual damages suffered by Ms. Gaines. *Accord Reiner v. Marceau,* 338 S.W.2d 285, 290 (Tex.Civ.App.—Houston 1960, no writ). Because the evidence presented was not determinative of the fair market value as that term was defined for the jury, we sustain the second and third points of error. Ms. Gaines had the burden to prove her damages but failed to sufficiently do so. Williams urges that because there was no evidence to support the submission of the value questions to the jury, that the judgment should be reversed and rendered. However, because the jury found, among other things, that Ms. Gaines and Williams made an agreement and that Williams breached the agreement, and that Ms. Gaines sustained some loss as a result, we, in the interest of justice, remand the matter for a determination of the actual value of her damages. *Arthur Andersen & Co. v. Perry Equipment Corporation,* 40 Tex. Sup.Ct. J. 222, 225 (Tex. Jan. 10, 1997), and *Citizens*

*National Bank of Lubbock v. Maxey,* 461 S.W.2d at 142. On any subsequent trial of this matter, the measure of damages must be the value of the stock as predicated by the market value of the assets of the company after deducting its liabilities, i.e., the existing circumstances as of November 23, 1993.

### Exemplary Damages and Attorney's Fees

As earlier noticed, the jury awarded the same $92,500 damages amount as recovery for Ms. Gaines's breach of contract, breach of fiduciary duty, common law fraud, and statutory fraud claims. She elected to recover in tort, since that recovery, as opposed to one for breach of contract, allowed her to recover the exemplary damages.

The failure of Ms. Gaines to sustain her award of damages dictates that the award of exemplary damages must be set aside. Under Texas law, exemplary damages are not recoverable as a general rule in the absence of actual damages. *Doubleday & Co., Inc. v. Rogers,* 674 S.W.2d 751, 753 (Tex.1984).

Similarly, the award of attorney's fees must be vacated. A party must satisfy two requirements to obtain an award of attorney's fees. First, the party must prevail on a cause of action for which attorney's fees are recoverable. *Rodgers v. RAB Investments, Ltd.,* 816 S.W.2d 543, 551 (Tex.App.— Dallas 1991, no writ). Second, the party must recover damages. *Id.* Because Ms. Gaines has not sustained her damages awards, the award of attorney's fees must be vacated. Points of error nine and ten are sustained.

Because the damages are not sufficiently supported by the evidence, the entire cause as to liability and damages must be reversed. Tex.R.App.P. 81(c); *Redman Homes, Inc. v. Ivy,* 920 S.W.2d 664, 669 (Tex.1996). Therefore, it is unnecessary to address the remaining points of error. Tex.R.App.P. 90(a).

Accordingly, the judgment is reversed and the cause is remanded to the trial court.