NO. 07-02-0063-CR


NO. 07-02-0064-CR


NO. 07-02-0065-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JUNE 27, 2002



______________________________




GREGORY RAY ROY, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;



NOS. 41,767-B, 41,768-B, 41,790-B; HONORABLE JOHN B. BOARD, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

ON ABATEMENT AND REMAND
 

 Appellant Gregory Ray Roy filed notices of appeal from judgments rendered in the
referenced proceedings. We have received the reporter's record, but have not received
the clerk's record in these matters. By letter dated June 20, 2002, we notified the court
clerk that the record had been due to be filed on June 5, 2002, and that if it could not be
immediately filed, she should file a request for extension of time. We have since been
notified by the court clerk that appellant has failed to pay or make arrangements to pay for
the record. However, we have nothing in the record at this time to indicate whether
appellant is indigent. This situation requires that we abate the appeals and remand to the
trial court in order to avoid further delay and to preserve the parties' rights. See Tex. R.
App. P. 37.3(a)(2). 

 Accordingly these appeals are abated and the causes remanded to the 181st District
Court of Potter County. Upon remand, the trial court judge shall immediately cause notice
to be given and conduct a hearing to determine:

 1. Whether appellant has abandoned his appeals.

 2. If appellant has not abandoned his appeals, whether appellant's present
attorney will diligently pursue his appeals.


 3. If it be determined that appellant is indigent and that appointment of an
attorney is necessary, the name, address, and State Bar of Texas
identification number of any successor attorney appointed.


 4. If appellant is not presently indigent, whether he has failed to make the
necessary arrangements for prosecuting his appeals.


 5. If any steps or orders are necessary to ensure the timely preparation of
a clerk's record and the diligent pursuit of appellant's appeals.


 In support of its determination, the trial court will prepare and file written findings
of fact and conclusions of law and cause them to be included in a supplemental clerk's
record. The hearing proceedings shall be transcribed and included in a supplemental
reporter's record. The supplemental clerk's and reporter's records shall be submitted to
the clerk of this court no later than July 29, 2002. 

 It is so ordered.

 Per Curiam

Do not publish. 


 



 meeting. The $150,000 loan was made to the estate,
with the estate's stock in GeoCenter serving as collateral. The loan later was extended
and increased to a total of $200,000. The loan was not repaid by the estate. Instead, in
August 2002, the note was subject to a redemption permitted under Section 303 of the
Internal Revenue Code (8) in which some of the estate's stock was redeemed by the
corporation in exchange for forgiveness of the loan. 

 During the August 1998 board meeting, the GeoCenter directors discussed suing
Art Gray for misuse of trade secrets. The company ultimately sued Gray, and Lee
negotiated a settlement in July 1999 by which the company acquired Gray's shares of
GeoCenter, paid Gray $235,000, and entered a software license agreement with him
permitting his use of some company software. After the settlement, 100% of the
outstanding GeoCenter shares were in the Hersey estate and will eventually (9) be held by
the testamentary trust.

 GeoCenter operated on a fiscal year ending January 31. In January 1999, the
board of directors discussed GeoCenter's potential corporate tax liability for the year
ending that month. The corporation had a substantial amount of cash, and the discussions
focused on payment of bonuses to employees due to concerns over the potential tax
liability arising from retained earnings. The board approved a $10,000 bonus to Risinger-Hersey. Gazaway recommended that the estate be included in the bonuses based on
Hersey's services through the date of his death. Attorneys advising Lee cautioned against
the idea of a distribution of cash to the estate. (10) The bonuses eventually approved by the
directors included a distribution of $475,000 to the estate. Although other bonuses were
paid, the estate's distribution was not made. GeoCenter ultimately paid $239,881 in taxes
on its fiscal year income. 

 In May of 2000, Cynthia Hersey, on behalf of the Frank J. Hersey Family Trust,
Justin Hersey and Travis J. Hersey filed suit against Lee and others (11) in the 152nd District
Court of Harris County, alleging, inter alia, that they had not received the benefits entitled
to them under the will. Appellees' pleadings asserted causes of action against Lee for
breach of his fiduciary duty to the trustee and the trust beneficiaries and for an unlawful
civil conspiracy with Risinger-Hersey and other defendants. (12) Lee moved to transfer venue
of the suit from Harris County to Montgomery County. The case was transferred to the
Montgomery County Court at Law No. 1, and was tried before a jury over a three-week
period.

 In the probate proceeding, the trial court approved Lee's resignation as independent
executor of the estate on February 23, 2001. The court appointed James Ullrich as
dependent administrator. Ullrich was serving as dependent administrator at the time of trial
and was present (13) and represented by counsel at the trial.

 At the conclusion of the trial, the jury found that Lee breached his fiduciary duty to
the trustee and his breach was not excused. The jury also found the amount of monetary
loss to the trustee caused by the breach of fiduciary duty to be as follows: (1) $240,000
resulting from any decrease in the value of the stock of GeoCenter Exploration, Inc. held
by the Hersey estate; (2) $180,000 resulting from any damage as a result of the $150,000
loan; and (3) $500,000 resulting from any other damage to the assets of the Hersey estate. 
The jury further found Lee and Risinger-Hersey were part of a conspiracy that damaged
the trustee. In addition, the jury found the harm to the trustee resulted from malice and
awarded punitive damages against Lee in the amount of $300,000 and against Risinger-Hersey in the amount of $300,001. The trial court disregarded the jury's answer to jury
question 4(3) concerning any other damage to the assets of the estate and withdrew the
award of $500,000 to appellees. The trial court then entered its judgment non obstante
veredicto in favor of appellees.

 Lee raises six issues on appeal in which he contends: (1) the trial court's judgment
is void because it did not have subject matter jurisdiction over the case; (2) the trial court
improperly allowed two parties without standing to participate in the trial of the case; (3)
there is no evidence, or alternatively insufficient evidence, to support the award of
damages against him; (4) the jury charge was improper; (5) the award of punitive damages
is excessive in light of the trial court's subsequent partial disregard of the jury's findings on
damages; and (6) punitive damages should not be awarded when there are no affirmable
actual damages. 

 By cross-point, appellees/cross-appellants raise the issue whether, contrary to the
JNOV, there was legally sufficient evidence to support the jury's answer to question 4(3)
that the trustee had suffered other damages in the amount of $500,000.

Issue One - Subject Matter Jurisdiction

 We first address the trial court's jurisdiction. Subject matter jurisdiction is a
prerequisite for the trial court to take action. Sivley v. Sivley, 972 S.W.2d 850, 855 (Tex.
App.-Tyler 1998, no pet.). Subject matter jurisdiction exists by operation of law and cannot
be conferred on a court by consent or waiver. (14) Dubai Petroleum Co. v. Kazi, 12 S.W.3d
71, 76 (Tex. 2000); Greathouse v. McConnell, 982 S.W.2d 165, 167 (Tex. App.-Houston
[1st Dist.] 1998, pet. denied). Lack of subject matter jurisdiction renders a judgment void
rather than merely voidable. Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex. 1990). 
Because subject matter jurisdiction raises a question of law, it is subject to de novo review. 
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). 

 Lee argues that the Montgomery County Court at Law No. 1 did not have jurisdiction
over this case because it has general jurisdiction over civil cases with an amount in
controversy up to $100,000 and the amount in controversy here was pleaded as being no
less than three million dollars. See TEX. GOV'T CODE Ann. §§ 21.009, 25.0003. Lee
contends the case, therefore, should have been tried in district court. We disagree. 

 Section 25.0003(d) of the Government Code provides that, except in counties with
statutory probate courts, a statutory county court "has, concurrent with the county court,
the probate jurisdiction provided by general law for county courts." Montgomery County
has no statutory probate court, so the statutory county courts exercise original probate
jurisdiction. Montgomery County Court at Law No. 1 is a statutory county court vested with
probate jurisdiction as provided by general law for county courts. TEX. GOVT. CODE §§
25.0003, 25.1722; TEX. PROB. CODE § 5(c). 

 Section 5 of the Probate Code provides that courts exercising original probate
jurisdiction shall also have the power to hear all matters incident to an estate. (15) See In re
Estate of McGarr, 10 S.W.3d 373, 379 (Tex.App.-Corpus Christi 2000, pet. denied)
(stating that, although the lawsuit involved a testamentary trust, the county court had
jurisdiction because the suit was a matter "appertaining to an estate"). Therefore, the
Montgomery County Court at Law No. 1 sitting as a probate court has jurisdiction over the
Hersey estate and over matters incident to it. TEX. PROB. CODE § 5(e). Section 5A(a)
defines "incident to an estate" as follows:

 In proceedings in the constitutional county courts and statutory county courts
at law, the phrases "appertaining to estates" and "incident to an estate" in
this Code include the probate of wills, the issuance of letters testamentary
and of administration, the determination of heirship, and also include, but are
not limited to, all claims by or against an estate, all actions for trial of title to
land incident to an estate and for the enforcement of liens thereon incident
to an estate, all actions for trial of the right of property incident to an estate,
and actions to construe wills, and generally all matters relating to the
settlement, partition, and distribution of estates of deceased persons.


TEX. PROB. CODE § 5A(a) (emphasis added).

 As applicable here, a suit is incident to an estate when the controlling issue is the
settlement, partition or distribution of the estate. Palmer v. Coble Wall Trust Co., Inc., 851
S.W.2d 178, 182 (Tex. 1992). One court has said a matter is incident to an estate if a
review of the pleadings indicates it will have a direct impact on the assimilation, distribution
and settlement of the estate. Estate of Arlitt v. Paterson, 995 S.W.2d 713, 718 (Tex.
App.-San Antonio 1999, pet. denied). The phrase should be given a broad interpretation. 
Hawkins v. Estate of Volkman, 898 S.W.2d 334, 340 (Tex.App.-San Antonio 1994, writ
denied) (citing Novak v. Stevens, 596 S.W.2d 848, 851 (Tex. 1980)).

 Review of appellees' pleadings shows that, before Lee's resignation as executor,
his retention of authority to vote the estate's shares of GeoCenter was a central issue and
concern of appellees. Among other relief, their pleadings sought an injunction requiring
that Lee immediately fund the trust with all the assets of the estate, specifically including
the outstanding shares of GeoCenter. Although there were other issues in the litigation
and it is difficult to say that was the controlling issue, we have no hesitation to find that the
litigation was, at that point, incident to Hersey's estate. 

 In addition, Lee's pleadings at the time the case was transferred to Montgomery
County, filed when he still was serving as independent executor, asserted counterclaims
against Cynthia Hersey to collect assets due the estate. His pleadings make clear that the
counterclaims were brought in his capacity as independent executor. The suit then
involved pursuit of a claim on behalf of an estate, providing a further reason for the trial
court to conclude the suit was a matter incident to an estate. TEX. PROB. CODE § 5A(a)
(defining incident to an estate to include "claims by or against an estate").

 By the time of trial, Lee had resigned as executor and the estate's shares of
GeoCenter were held by the dependent administrator. Appellees no longer asked for an
injunction and their claims for damages were more central to the case. The damages
sought by the trustee, as the sole devisee under Hersey's will, however, were the damages
allegedly suffered by the estate. The damages questions ultimately posed asked the jury
to determine damages resulting from a diminution in the value of the GeoCenter stock
"held by the Estate," those resulting from the loans from GeoCenter to the estate, and
those from "any other damage" to the assets of the estate. As previously noted, at the time
of trial, the administration of Hersey's estate had not yet been completed and the trust had
not yet received any assets from the administrator. Under the peculiar posture of this case,
we conclude that the litigation remained incident to Hersey's estate. Lee's first issue is
overruled.

Issue Three - Evidence Supporting Damages

 We next turn to appellant's third issue on appeal which states that the "trial court
erred in awarding actual damages against Mr. Lee, because there was no evidence, or
alternatively insufficient evidence, to support damages 'to the Trustee' allegedly caused
by Mr. Lee's actions." The damages question given the jury read as follows:

 QUESTION NO. 4

 Find the amount of monetary loss, if any, to the Trustee
proximately caused by the breach of fiduciary duty by Reginald
Lee.

 . . .

 Consider the following elements of damages, if any, and none
other. For each element that you find any damages, state the
date that the Trustee first suffered such damage, if any:



 Any decrease in the value of the stock of GeoCenter
Exploration, Inc. held by the Estate, or
 Any damage as a result of the $150,000 loan, or
 Any other damage to the assets of the Estate.


 

The jury, in response to question 4(1), found damages of $240,000 first suffered on
January 22, 1999; found $180,000 first suffered on October 9, 1998 in response to
question 4(2); and found $500,000 first suffered on April 9, 1998 in response to question
4(3). As noted, the trial court disregarded the jury's answer to question 4(3).

 When appellant challenges both the legal and factual sufficiency of the evidence,
the appellate court should first review the legal sufficiency challenge. Glover v. Texas Gen.
Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981). When reviewing the legal sufficiency of the
evidence, the appellate court must examine the record in the light most favorable to the
jury finding and must reject all evidence or reasonable inferences to the contrary. Id. If
more than a scintilla of the evidence supports the challenged finding, the no evidence
challenge must fail. Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003). 
More than a scintilla of evidence exists when the evidence "rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions." King Ranch, Inc.
v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). When the evidence offered to prove a
vital fact is so weak as to do no more than create a mere surmise or suspicion of its
existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. 
Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). See also Houston Mercantile
Exchange Corp. v. Dailey Petroleum Corp., 930 S.W.2d 242, 246-49 (Tex.App.-Houston
[14th Dist.] 1996, no writ) (explaining and applying legal sufficiency analysis to a review of
damages).

 We first consider whether there was legally sufficient evidence to support the
$240,000 damage award under question 4(1) for "any decrease in the value of the stock
of GeoCenter Exploration, Inc. held by the Estate." We conclude there was not.

 Appellees argue the evidence shows the value of the company's stock was reduced
by payment of an excessive salary to Risinger-Hersey. At trial, appellees presented an
expert witness, Ron Tribolet, a certified public accountant and certified valuation analyst. 
Tribolet testified that, based on an industry salary survey, the salary paid Risinger-Hersey
following Hersey's death through the period of time that Lee served on the GeoCenter
board of directors was excessive, considering her duties. Tribolet agreed that excessive
salaries paid to employees would have a negative effect on the value of the stock. He
testified, "[i]f excess salaries are paid, that reduces the amount of the money that would
go to the shareholder and the value of the company is in the value of the stock and in the
value of the resources and assets to the shareholder." (16) 

 Appellees also contend the value of GeoCenter's stock was reduced when Lee
countermanded the directors' decision to pay $475,000 to the Hersey estate. Appellees
argue the value of the stock was reduced when the company retained the funds and paid
tax on that amount of the company's income rather than distributing the funds to the estate
and deducting that amount from the company's income for tax purposes. As noted,
GeoCenter's 1998 tax return for the fiscal year ending January 31, 1999 reflects the
company paid corporate federal income tax of $239,881. As evidence of the effect of that
payment on the value of the company's stock, appellees point to the following exchange
during their examination of Lee:

 Appellees' counsel: Now, with respect to the payment of the Internal
Revenue Service you told me about earlier, somewhere between 170 and
$270,000. When that money was paid to the Internal Revenue Service, it
came out of the cash column of the corporation and was gone forever,
wasn't it?


 Lee: That's true.


 And it was never replaced with anything else?
 
 Not in the books.
 



 Okay. And when that money was paid, that certainly took money out
of the corporation, didn't it?
 
 Yes.
 



 And when that money that was paid to the IRS up to $270,000 that
was gone forever, that clearly reduced the value of the stock of the
corporation, didn't it, sir?
 
 That transaction, yes.
 


 

 The jury charge contained no definition of the term "value" as applied to GeoCenter
stock. The parties' briefs on appeal do not discuss, or cite authority concerning, the
measure of value applicable to our review of the jury's finding. We will apply case law
concerning market value of a corporation's shares. 

 The record contains evidence of the market value of the estate's 61% interest in the
corporation as of the date of Hersey's death. His federal estate tax return was admitted
in evidence, and contains an appraisal report valuing his shares, as of that date, at
$500,840. But no witness, expert or lay, testified to market value of that interest at any
later date. (17) The record contains the company's financial statements and tax returns for
the years following Hersey's death, but those documents provide no probative evidence
of market value of GeoCenter, or the estate's interest in the company. See Bendalin v.
Delgado, 406 S.W.2d 897, 900-01 (Tex. 1966); Williams v. Gaines, 943 S.W.2d 185, 193
(Tex.App.-Amarillo 1997, writ denied) (both stating book value is entitled to little, if any,
weight in determining the value of a corporation's stock, and many other factors must be
taken into consideration).

 When calculating the value of stock in order to determine the amount of damages
to award an injured party who had an ownership interest in the corporation, evidence of the
value of the corporation at the time the alleged injury occurred is required. Pabich v.
Kellar, 71 S.W.3d 500, 509 (Tex.App.-Fort Worth 2002, pet. denied); Williams, 943
S.W.2d at 193. We conclude such evidence is no less necessary to the determination of
diminution in the value of an interest in a corporation. In the absence of evidence of the
value of the estate's GeoCenter stock on January 22, 1999 (the date the jury determined
the trustee was first damaged through a decrease in the value of the estate's stock), or at
any date thereafter, appellees failed to prove a decrease in the value supporting the award
of damages. Pabich, 71 S.W.3d at 509. Viewed in its most favorable light, the evidence
on which appellees rely to support the jury's finding that the trustee suffered damages of
$240,000 from a decrease in the value of the stock held by the estate created no more
than a surmise of such a decrease. Kindred, 650 S.W.2d at 63. We sustain Lee's third
issue as to jury question 4(1).

 In its response to damages question 4(2), the jury found that the trustee suffered
$180,000 in damages, beginning on October 9, 1998, (18) as a result of the $150,000 loan
made by GeoCenter to the estate. In response to Lee's contention that no evidence
supports the finding, appellees argue that "there was ample evidence that Mr. Lee used
the proceeds of this loan to fund his efforts to hide the conspiracy from the heirs of the
estate and therefore the taking of the loan proximately caused damage to the Estate." In
support of this proposition, appellees point to evidence the loan was needed, in part, to pay
the fees of the attorneys Lee retained to probate the estate, who the jury found were part
of the civil conspiracy. 

 Cynthia Hersey and other witnesses testified to numerous requests she made
seeking information about the operations of GeoCenter and the status of matters involving
the estate. The record also contains letters to Lee in which she made such requests, and
the responses, which normally came from Lee's attorneys. Cynthia Hersey contended that
Lee was hiding information from her. Even when that evidence is viewed most favorably
to appellees, and even assuming that Lee's "efforts to hide the conspiracy" can be said to
be a result of the loan, it is not apparent from the evidence how the trustee was damaged
by that conduct. Appellees do not point to any injury to the trustee. 

 Appellees also contend the interest that accrued on the loan constituted damages
to the estate supporting the jury's finding. As noted, the loan was repaid through the
redemption of some of the estate's shares of GeoCenter, and the documentary evidence
shows that the accrued interest was included in the calculation of the number of shares
required for the redemption. The estate owned 100% of the outstanding shares of
GeoCenter before and after the redemption. There is no evidence of damage to the
trustee from the interest charged on the loan. 

 Having reviewed the record in its entirety, we can find no evidence supporting the
jury's finding that the $150,000 loan resulted in damages to the trustee. Kindred, 650
S.W.2d at 63; Houston Mercantile, 930 S.W.2d at 246-49. We also sustain Lee's third
issue with regard to jury question 4(2). 

Cross-Appeal

 Having sustained appellant's third issue on appeal on legal sufficiency grounds, we
now turn to appellees/cross-appellants' cross-brief on appeal. In their cross-brief,
appellees/cross-appellants raise a single issue contending there is legally sufficient
evidence to support the jury's answer to question 4(3). In response to question 4(3), the
jury awarded appellees $500,000 for "any other damage to the assets of the Estate." The
jury found the damages were first suffered on April 9, 1998, the day following Hersey's
death. The trial court disregarded the jury's answer and entered its judgment non obstante
veredicto. A JNOV is proper when a directed verdict would have been proper. TEX. R. CIV.
P. 301; Fort Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991). 
A directed verdict for a defendant is appropriate when the plaintiff fails to present evidence
raising a fact issue essential to the plaintiff's right of recovery or when the evidence
conclusively establishes a defense to the plaintiff's cause of action. Prudential Ins. Co. of
America v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000). 

 We review a JNOV under a no evidence standard of review. Sherman v. First Nat'l
Bank, 760 S.W.2d 240, 242 (Tex. 1988). As such, the evidence is viewed in the light most
favorable to the jury's findings, disregarding all evidence and inferences to the contrary. 
Tiller v. McLure, 121 S.W.3d 709, 713 (Tex. 2003). If more than a scintilla supports the
jury's findings, it must be upheld and the judgment notwithstanding the verdict should be
reversed. Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 228 (Tex. 1990). More than a
scintilla exists when the evidence supporting the finding rises to a level that would enable
reasonable minds to differ in their conclusions. See Nat'l Convenience Stores, Inc. v.
Matherne, 987 S.W.2d 145, 148 (Tex. App.-Houston [14th Dist.] 1999, no pet.) (stating rule
in context of review of denial of JNOV). 

 In support of the jury's finding as to question 4(3), appellees/cross-appellants again
point to the evidence "that Lee . . . cancelled a . . . bonus to be paid to the Estate and
instead paid a huge amount of taxes to the IRS." We have stated our conclusion that
corporate income tax liability resulting from a failure to distribute the $475,000 authorized
by GeoCenter's board of directors to the estate does not support a finding of damages for
a decrease in the value of the corporation's shares. We similarly find that the failure to
distribute the funds to the estate and payment of income tax by the corporation are not
evidence of damages suffered by the trustee from "any other damage to the assets of the
Estate." Nothing shows that GeoCenter would have been better off if it had distributed
$475,000 to the estate, and nothing shows that any other asset of the estate was harmed
by the corporation's retention of the funds. Nor is there evidence that the tax treatment
would have been more favorable had the funds been distributed. The payment of taxes
by GeoCenter amounts to no more than a scintilla of evidence of damage to the assets of
the estate. Nat'l Convenience Stores, 987 S.W.2d at 148. 

 Appellees/cross-appellants also direct us again to the evidence of excessive salaries
paid to Risinger-Hersey and showing "how this money could have been used by Lee to
fund the Estate through a dividend or bonus." They cite a portion of the record in which
Lee was questioned about the estate's ability to repay the GeoCenter loan if it had more
cash. We have stated our conclusion there is no evidence the trustee was damaged by
the loan. We similarly find the evidence to which appellees/cross-appellants refer is not
probative of other damage to the assets of the estate. 

 We find no probative evidence in this record to support the $500,000 damages
awarded the trustee by the jury for other damage to assets of the estate. (19) The trial court
did not err in its decision to disregard the jury's answer to question 4(3). We overrule
appellees/cross-appellants' issue on appeal. 

Issue Six - Exemplary Damages

 Lee's sixth issue on appeal complains of the jury's award of punitive damages.
Recovery of actual damages is a prerequisite to the receipt of exemplary damages. Saenz
v. Fidelity & Guaranty Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996); Juliette Fowler
Homes, Inc. v. Welch Assoc., Inc., 793 S.W.2d 660, 667 (Tex. 1990). Our sustaining of
Lee's issues challenging the award of actual damages requires that we sustain his sixth
issue also.

Conclusion

 Our resolution of the foregoing issues disposes of the appeal, so we do not address
Lee's remaining issues. We reverse the trial court's judgment with regard to jury charge
questions 4(1) and 4(2). We affirm the trial court's judgment with regard to jury charge
question 4(3). We reverse the award of punitive damages and render judgment that
appellees/cross-appellants Justin Hersey, Travis J. Hersey, and the Frank J. Hersey Family
Trust take nothing.

 

 James T. Campbell

 Justice



 

 

 

 


1. - 
 
2. "" 
 
3. - 
 - - 
 - 
 
4. - 
 
5. Lee lived near Denver, Colorado, where his oil and gas exploration company was
headquartered. While he served as executor, he typically spent a few days each month
in Houston.
6. Testimony varied concerning Hersey's annual salary at the time of his death,
providing figures between $150,000 and $175,000. However, the parties agree Risinger-Hersey "took over" Hersey's salary shortly after his death. 
7. Lee waived commissions as independent executor of the Hersey estate.
8. 26 U.S.C. § 303. The probate court approved the redemption.
9. At the time of trial, the administration of Hersey's estate had not yet been
completed and the trustee had not yet received any assets from the estate.
10. The attorneys cited concerns over possible adverse tax consequences to the
estate, the likelihood that Risinger-Hersey would claim the payment to be community
property, and the possibility that Art Gray or the Internal Revenue Service would attempt
to characterize the payment as a corporate dividend.
11. The original defendants included Lee, Risinger-Hersey, York, GeoCenter, and
others. 
12. Appellees brought other causes of action, but they were dismissed prior to trial.
13. Ullrich was not permitted to examine witnesses. The record reflects, through the
comments of the trial court, that the court had ruled previously claims were not to be
brought by the dependent administrator. We have been provided no explanation, through
briefing or the record before us, for the reasoning behind the trial court's apparent
exclusion of the dependent administrator from the lawsuit.
14. We do not reach appellees' contention that Lee, nonetheless, is barred by judicial
estoppel from denying the trial court's jurisdiction.
15. The language currently appears in section 5(f), which was section 5(e) in the 1999
version of the statute, applicable here. 
16. Tribolet also testified, in response to a question asking his opinion on the effect
payment of an excessive salary would have on the value of the company's stock, "That
would reduce the value to the shareholder because you could replace that person for a
more reasonable salary and save that amount of money and get the same effort."
17. Tribolet was prepared to testify concerning valuation of GeoCenter, but the trial
court granted Lee's motion to exclude that testimony, a ruling not challenged on appeal. 
18. Evidence showed the loaned funds were advanced in October 1998.
19. Appellees/cross-appellants further assert there is "evidence that the Trustee had
to expend approximately $100,000 to defend the common law marriage suit that Lee failed
to properly defend in breach of his fiduciary duties." The record does not support this
assertion.