**Reginald S.Y. LEE, Appellant/Cross–Appellee**

v.

**Justin HERSEY, Travis J. Hersey and the Frank. J. Hersey Family Trust, Appellees/Cross–Appellants.**

No. 07–03–0219–CV.

Court of Appeals of Texas, Amarillo.

March 24, 2006.

James Stilwell, Andrews & Kurth L.L.P., The Woodlands, Linda L. Kelly, Dinkins Kelly Lenox Lamb & Walker, Suzanne E. Gross, Andrews & Kurth, J. Douglas Sutter, Charles W. Kelly, Kelly Sutter & Kendrick P.C., Phillip C. Sum-

mers, Lorance & Thompson, P.C., Houston, for Appellee.

Kenna M. Seiler, Hope & Causey, Conroe, Perry McConnell, David O'Neil, O'Neil & McConnell, E.M. Schulze, Schulze & McDonald, The Woodlands, Patrick A. Green, Green & Green, Conroe, Willie Ben Daw III, James L. Ray, Daw & Ray, Houston, for Appellant.

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

## OPINION ON REHEARING

JAMES T. CAMPBELL, Justice.

The Court this day overruled appellees' Motion for Rehearing, withdrew its original opinion dated February 23, 2006 and issued this opinion in its place.

This is an appeal from a judgment entered *non obstante veredicto* in favor of appellees the Frank J. Hersey Family Trust, Justin Hersey, and Travis J. Hersey. We will reverse and render in part, affirm in part, and enter a take-nothing judgment in favor of appellant Reginald S.Y. Lee.[1]

Factual and Procedural Background

Frank Hersey,[2] who resided in Montgomery County, Texas, died in an automobile accident on April 8, 1998. In his will, Hersey left his entire estate to a testamentary trust, naming his ex-wife, plaintiff Cynthia Hersey, as trustee. The trust benefitted Hersey's two sons by Cynthia Hersey, plaintiffs Justin Hersey and Travis J. Hersey. The trust also benefitted his daughter (involuntary plaintiff Amy Hersey) by his second wife, defendant Lynda Risinger–Hersey.[3]

1. Appellant Lynda Risinger–Hersey filed a motion to dismiss her appeal, which we have granted. Lee is the only remaining appellant.

2. We will refer to the decedent Frank Hersey as "Hersey" and to other Hersey family members by their full names.

3. Frank Hersey and Lynda Risinger–Hersey were not ceremonially married. After his

Lee and Hersey became friends in college and had maintained their friendship. They both ran oil industry-related companies. Hersey named Lee as alternate independent executor[4] in his will. On Lee's application for probate of Hersey's will, the Montgomery County Court at Law No. 1 admitted the will to probate and appointed Lee independent executor on May 12, 1998.

The primary asset of Hersey's estate was his interest in GeoCenter Exploration, Inc. ("GeoCenter"), a Houston company engaged in seismic data processing services to the oil industry. Hersey was founder and president of the company and, at the time of his death, owned approximately 61% of the company's outstanding shares. Under his will, his shares of GeoCenter passed to the testamentary trust. Most of the evidence presented at trial concerned actions taken with respect to GeoCenter during the months following Hersey's death.

The remaining 39% of GeoCenter stock was owned by Art Gray. Shortly before his death, Hersey had removed Gray as a director of GeoCenter and the only remaining directors were Hersey and GeoCenter's corporate counsel, William York. After his appointment as executor on May 12, 1998, Lee was appointed acting president of GeoCenter,[5] and Risinger–Hersey and Cleve Gazaway, GeoCenter's accountant, were made directors.

Prior to Hersey's death, Risinger–Hersey worked as a bookkeeper for GeoCenter. Her annual compensation never exceeded $26,000. After Hersey's death, the position of general manager was created for Risinger–Hersey. She initially was paid on the basis of Hersey's $150,000 annual salary.[6] In July of 1998, the board of directors voted to set her salary at $80,000 per year. The salary was later raised but, at the time of trial, it had been reduced to an annual figure of $55,000.

In July 1998, Gazaway proposed a per diem of $500 for Lee which was approved by the board of directors.[7] In August 1998, Cynthia Hersey attended a GeoCenter board meeting and was elected to the board of directors. At that August meeting, Lee requested a loan from GeoCenter in order to pay estate expenses. Cynthia Hersey resigned from the board of directors in December 1998. At a January 13, 1999 board meeting, Gazaway also resigned from the board of directors and Lee was elected to the board.

The loan to the Hersey estate was ultimately approved by the GeoCenter board of directors during a January 6, 1999 meeting. The $150,000 loan was made to the estate, with the estate's stock in GeoCenter serving as collateral. The loan later was extended and increased to a total of $200,000. The loan was not repaid by the estate. Instead, in August 2002, the

death, Risinger–Hersey filed a claim seeking a declaration that a common-law marriage had existed between them. The court declared her to be his common-law wife from June 1995 until his death on April 8, 1998.

4. Another friend of Hersey was the first-named independent executor in the will. He did not serve.

5. Lee lived near Denver, Colorado, where his oil and gas exploration company was headquartered. While he served as executor, he

typically spent a few days each month in Houston.

6. Testimony varied concerning Hersey's annual salary at the time of his death, providing figures between $150,000 and $175,000. However, the parties agree Risinger–Hersey "took over" Hersey's salary shortly after his death.

7. Lee waived commissions as independent executor of the Hersey estate.

note was subject to a redemption permitted under Section 303 of the Internal Revenue Code[8] in which some of the estate's stock was redeemed by the corporation in exchange for forgiveness of the loan.

During the August 1998 board meeting, the GeoCenter directors discussed suing Art Gray for misuse of trade secrets. The company ultimately sued Gray, and Lee negotiated a settlement in July 1999 by which the company acquired Gray's shares of GeoCenter, paid Gray $235,000, and entered a software license agreement with him permitting his use of some company software. After the settlement, 100% of the outstanding GeoCenter shares were in the Hersey estate and will eventually[9] be held by the testamentary trust.

GeoCenter operated on a fiscal year ending January 31. In January 1999, the board of directors discussed GeoCenter's potential corporate tax liability for the year ending that month. The corporation had a substantial amount of cash, and the discussions focused on payment of bonuses to employees due to concerns over the potential tax liability arising from retained earnings. The board approved a $10,000 bonus to Risinger–Hersey. Gazaway recommended that the estate be included in the bonuses based on Hersey's services through the date of his death. Attorneys advising Lee cautioned against the idea of a distribution of cash to the estate.[10] The bonuses eventually approved by the directors included a distribution of $475,000 to the estate. Although other bonuses were paid, the estate's distribution was not made. GeoCenter ultimately paid $239,881 in taxes on its fiscal year income.

In May of 2000, Cynthia Hersey, on behalf of the Frank J. Hersey Family Trust, Justin Hersey and Travis J. Hersey filed suit against Lee and others[11] in the 152nd District Court of Harris County, alleging, *inter alia*, that they had not received the benefits entitled to them under the will. Appellees' pleadings asserted causes of action against Lee for breach of his fiduciary duty to the trustee and the trust beneficiaries and for an unlawful civil conspiracy with Risinger–Hersey and other defendants.[12] Lee moved to transfer venue of the suit from Harris County to Montgomery County. The case was transferred to the Montgomery County Court at Law No. 1, and was tried before a jury over a three-week period.

In the probate proceeding, the trial court approved Lee's resignation as independent executor of the estate on February 23, 2001. The court appointed James Ullrich as dependent administrator. Ullrich was serving as dependent administrator at the time of trial and was present[13] and represented by counsel at the trial.

---

8. 26 U.S.C. § 303. The probate court approved the redemption.

9. At the time of trial, the administration of Hersey's estate had not yet been completed and the trustee had not yet received any assets from the estate.

10. The attorneys cited concerns over possible adverse tax consequences to the estate, the likelihood that Risinger–Hersey would claim the payment to be community property, and the possibility that Art Gray or the Internal Revenue Service would attempt to characterize the payment as a corporate dividend.

11. The original defendants included Lee, Risinger–Hersey, York, GeoCenter, and others.

12. Appellees brought other causes of action, but they were dismissed prior to trial.

13. Ullrich was not permitted to examine witnesses. The record reflects, through the comments of the trial court, that the court had ruled previously claims were not to be brought by the dependent administrator. We have been provided no explanation, through briefing or the record before us, for the reasoning behind the trial court's apparent exclusion of the dependent administrator from the lawsuit.

At the conclusion of the trial, the jury found that Lee breached his fiduciary duty to the trustee and his breach was not excused. The jury also found the amount of monetary loss to the trustee caused by the breach of fiduciary duty to be as follows: (1) $240,000 resulting from any decrease in the value of the stock of GeoCenter Exploration, Inc. held by the Hersey estate; (2) $180,000 resulting from any damage as a result of the $150,000 loan; and (3) $500,000 resulting from any other damage to the assets of the Hersey estate. The jury further found Lee and Risinger–Hersey were part of a conspiracy that damaged the trustee. In addition, the jury found the harm to the trustee resulted from malice and awarded punitive damages against Lee in the amount of $300,000 and against Risinger–Hersey in the amount of $300,000. The trial court disregarded the jury's answer to jury question 4(3) concerning any other damage to the assets of the estate and withdrew the award of $500,000 to appellees. The trial court then entered its judgment non obstante veredicto in favor of appellees.

Lee raises six issues on appeal in which he contends: (1) the trial court's judgment is void because it did not have subject matter jurisdiction over the case; (2) the trial court improperly allowed two parties without standing to participate in the trial of the case; (3) there is no evidence, or alternatively insufficient evidence, to support the award of damages against him; (4) the jury charge was improper; (5) the award of punitive damages is excessive in light of the trial court's subsequent partial disregard of the jury's findings on damages; and (6) punitive damages should not be awarded when there are no affirmable actual damages.

14. We do not reach appellees' contention that Lee, nonetheless, is barred by judicial estop-

By cross-point, appellees/cross-appellants raise the issue whether, contrary to the JNOV, there was legally sufficient evidence to support the jury's answer to question 4(3) that the trustee had suffered other damages in the amount of $500,000.

Issue One—Subject Matter Jurisdiction

 We first address the trial court's jurisdiction. Subject matter jurisdiction is a prerequisite for the trial court to take action. *Sivley v. Sivley*, 972 S.W.2d 850, 855 (Tex.App.-Tyler 1998, no pet.). Subject matter jurisdiction exists by operation of law and cannot be conferred on a court by consent or waiver.[14] *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex.2000); *Greathouse v. McConnell*, 982 S.W.2d 165, 167 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). Lack of subject matter jurisdiction renders a judgment void rather than merely voidable. *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex.1990). Because subject matter jurisdiction raises a question of law, it is subject to *de novo* review. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998).

Lee argues that the Montgomery County Court at Law No. 1 did not have jurisdiction over this case because it has general jurisdiction over civil cases with an amount in controversy up to $100,000 and the amount in controversy here was pleaded as being no less than three million dollars. *See* TEX. GOV'T CODE Ann. §§ 21.009, 25.0003. Lee contends the case, therefore, should have been tried in district court. We disagree.

Section 25.0003(d) of the Government Code provides that, except in counties with statutory probate courts, a statutory county court "has, concurrent with the county

pel from denying the trial court's jurisdiction.

court, the probable jurisdiction provided by general law for county courts." Montgomery County has no statutory probate court, so the statutory county courts exercise original probate jurisdiction. Montgomery County Court at Law No. 1 is a statutory county court vested with probate jurisdiction as provided by general law for county courts. TEX. GOV'T CODE §§ 25.0003, 25.1722; TEX. PROB. CODE § 5(c).

Section 5 of the Probate Code provides that courts exercising original probate jurisdiction shall also have the power to hear all matters *incident to an estate.*[15] *See In re Estate of McGarr,* 10 S.W.3d 373, 379 (Tex.App.-Corpus Christi 2000, pet. denied) (stating that, although the lawsuit involved a testamentary trust, the county court had jurisdiction because the suit was a matter "appertaining to an estate"). Therefore, the Montgomery County Court at Law No. 1 sitting as a probate court has jurisdiction over the Hersey estate and over matters incident to it. TEX. PROB. CODE § 5(e). Section 5A(a) defines "incident to an estate" as follows:

> In proceedings in the constitutional county courts and statutory county courts at law, the phrases "appertaining to estates" and "incident to an estate" in this Code include the probate of wills, the issuance of letters testamentary and of administration, the determination of heirship, and also include, but are not limited to, all claims by or against an estate, all actions for trial of title to land incident to an estate and for the enforcement of liens thereon incident to an estate, all actions for trial of the right of property incident to an estate, and actions to construe wills, and *generally all matters relating to the settlement, parti-*

*tion, and distribution of estates of deceased persons.*

TEX. PROB. CODE § 5A(a) (emphasis added).

 As applicable here, a suit is incident to an estate when the controlling issue is the settlement, partition or distribution of the estate. *Palmer v. Coble Wall Trust Co., Inc.,* 851 S.W.2d 178, 182 (Tex. 1992). One court has said a matter is incident to an estate if a review of the pleadings indicates it will have a direct impact on the assimilation, distribution and settlement of the estate. *Estate of Arlitt v. Paterson,* 995 S.W.2d 713, 718 (Tex. App.-San Antonio 1999, pet. denied). The phrase should be given a broad interpretation. *Hawkins v. Estate of Volkmann,* 898 S.W.2d 334, 340 (Tex.App.-San Antonio 1994, writ denied) (citing *Novak v. Stevens,* 596 S.W.2d 848, 851 (Tex.1980)).

 Review of appellees' pleadings shows that, before Lee's resignation as executor, his retention of authority to vote the estate's shares of GeoCenter was a central issue and concern of appellees. Among other relief, their pleadings sought an injunction requiring that Lee immediately fund the trust with all the assets of the estate, specifically including the outstanding shares of GeoCenter. Although there were other issues in the litigation and it is difficult to say that was the controlling issue, we have no hesitation to find that the litigation was, at that point, incident to Hersey's estate.

In addition, Lee's pleadings at the time the case was transferred to Montgomery County, filed when he still was serving as independent executor, asserted counterclaims against Cynthia Hersey to collect assets due the estate. His pleadings make

---

**15.** The language currently appears in section 5(f), which was section 5(e) in the 1999 version of the statute, applicable here.

clear that the counterclaims were brought in his capacity as independent executor. The suit then involved pursuit of a claim on behalf of an estate, providing a further reason for the trial court to conclude the suit was a matter incident to an estate. TEX. PROB. CODE § 5A(a) (defining incident to an estate to include "claims by or against an estate").

By the time of trial, Lee had resigned as executor and the estate's shares of Geo-Center were held by the dependent administrator. Appellees no longer asked for an injunction and their claims for damages were more central to the case. The damages sought by the trustee, as the sole devisee under Hersey's will, however, were the damages allegedly suffered by the estate. The damages questions ultimately posed asked the jury to determine damages resulting from a diminution in the value of the GeoCenter stock "held by the Estate," those resulting from the loans from GeoCenter to the estate, and those from "any other damage" to the assets of the estate. As previously noted, at the time of trial, the administration of Hersey's estate had not yet been completed and the trust had not yet received any assets from the administrator. Under the peculiar posture of this case, we conclude that the litigation remained incident to Hersey's estate. Lee's first issue is overruled.

### Issue Three—Evidence Supporting Damages

We next turn to appellant's third issue on appeal which states that the "trial court erred in awarding actual damages against Mr. Lee, because there was no evidence, or alternatively insufficient evidence, to support damages 'to the Trustee' allegedly caused by Mr. Lee's actions." The damages question given the jury read as follows:

QUESTION NO. 4

Find the amount of monetary loss, if any, to the Trustee proximately caused by the breach of fiduciary duty by Reginald Lee.

. . .

Consider the following elements of damages, if any, and none other. For each element that you find any damages, state the date that the Trustee first suffered such damage, if any:

1. Any decrease in the value of the stock of GeoCenter Exploration, Inc. held by the Estate, or

2. Any damage as a result of the $150,000 loan, or

3. Any other damage to the assets of the Estate.

The jury, in response to question 4(1), found damages of $240,000 first suffered on January 22, 1999; found $180,000 first suffered on October 9, 1998 in response to question 4(2); and found $500,000 first suffered on April 9, 1998 in response to question 4(3). As noted, the trial court disregarded the jury's answer to question 4(3).

When appellant challenges both the legal and factual sufficiency of the evidence, the appellate court should first review the legal sufficiency challenge. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981). When reviewing the legal sufficiency of the evidence, the appellate court must examine the record in the light most favorable to the jury finding and must reject all evidence or reasonable inferences to the contrary. *Id.* If more than a scintilla of the evidence supports the challenged finding, the no evidence challenge must fail. *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex.2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and

fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983). *See also Houston Mercantile Exchange Corp. v. Dailey Petroleum Corp.,* 930 S.W.2d 242, 246–49 (Tex.App.-Houston [14th Dist.] 1996, no writl) (explaining and applying legal sufficiency analysis to a review of damages).

■ We first consider whether there was legally sufficient evidence to support the $240,000 damage award under question 4(1) for "any decrease in the value of the stock of GeoCenter Exploration, Inc. held by the Estate." We conclude there was not.

Appellees argue the evidence shows the value of the company's stock was reduced by payment of an excessive salary to Risinger–Hersey. At trial, appellees presented an expert witness, Ron Tribolet, a certified public accountant and certified valuation analyst. Tribolet testified that, based on an industry salary survey, the salary paid Risinger–Hersey following Hersey's death through the period of time that Lee served on the GeoCenter board of directors was excessive, considering her duties. Tribolet agreed that excessive salaries paid to employees would have a negative effect on the value of the stock. He testified, "[i]f excess salaries are paid, that reduces the amount of the money that would go to the shareholder and the value of the company is in the value of the stock

and in the value of the resources and assets to the shareholder."[16]

Appellees also contend the value of Geo-Center's stock was reduced when Lee countermanded the directors' decision to pay $475,000 to the Hersey estate. Appellees argue the value of the stock was reduced when the company retained the funds and paid tax on that amount of the company's income rather than distributing the funds to the estate and deducting that amount from the company's income for tax purposes. As noted, GeoCenter's 1998 tax return for the fiscal year ending January 31, 1999 reflects the company paid corporate federal income tax of $239,881. As evidence of the effect of that payment on the value of the company's stock, appellees point to the following exchange during their examination of Lee:

Appellees' counsel: Now, with respect to the payment of the Internal Revenue Service you told me about earlier, somewhere between 170 and $270,000. When that money was paid to the Internal Revenue Service, it came out of the cash column of the corporation and was gone forever, wasn't it?

Lee: That's true.

Q: And it was never replaced with anything else?

A: Not in the books.

Q: Okay. And when that money was paid, that certainly took money out of the corporation, didn't it?

A: Yes.

Q: And when that money that was paid to the IRS up to $270,000 that was gone forever, that clearly reduced the value of the stock of the corporation, didn't it, sir?

**16.** Tribolet also testified, in response to a question asking his opinion on the effect payment of an excessive salary would have on the value of the company's stock, "That would reduce the value to the shareholder because you could replace that person for a more reasonable salary and save that amount of money and get the same effort."

A: That transaction, yes.

The jury charge contained no definition of the term "value" as applied to GeoCenter stock. The parties' briefs on appeal do not discuss, or cite authority concerning, the measure of value applicable to our review of the jury's finding. We will apply case law concerning market value of a corporation's shares.

The record contains evidence of the market value of the estate's 61% interest in the corporation as of the date of Hersey's death. His federal estate tax return was admitted in evidence, and contains an appraisal report valuing his shares, as of that date, at $500,840. But no witness, expert or lay, testified to market value of that interest at any later date.[17] The record contains the company's financial statements and tax returns for the years following Hersey's death, but those documents provide no probative evidence of market value of GeoCenter, or the estate's interest in the company. *See Bendalin v. Delgado,* 406 S.W.2d 897, 900–01 (Tex.1966); *Williams v. Gaines,* 943 S.W.2d 185, 193 (Tex.App.-Amarillo 1997, writ denied) (both stating book value is entitled to little, if any, weight in determining the value of a corporation's stock, and many other factors must be taken into consideration).

When calculating the value of stock in order to determine the amount of damages to award an injured party who had an ownership interest in the corporation, evidence of the value of the corporation at the time the alleged injury occurred is required. *Pabich v. Kellar,* 71 S.W.3d 500, 509 (Tex.App.-Fort Worth 2002, pet. denied); *Williams,* 943 S.W.2d at 193. We conclude such evidence is no less necessary to the determination of diminution in the

value of an interest in a corporation. In the absence of evidence of the value of the estate's GeoCenter stock on January 22, 1999 (the date the jury determined the trustee was first damaged through a decrease in the value of the estate's stock), or at any date thereafter, appellees failed to prove a decrease in the value supporting the award of damages. *Pabich,* 71 S.W.3d at 509. Viewed in its most favorable light, the evidence on which appellees rely to support the jury's finding that the trustee suffered damages of $240,000 from a decrease in the value of the stock held by the estate created no more than a surmise of such a decrease. *Kindred,* 650 S.W.2d at 63. We sustain Lee's third issue as to jury question 4(1).

In its response to damages question 4(2), the jury found that the trustee suffered $180,000 in damages, beginning on October 9, 1998,[18] as a result of the $150,000 loan made by GeoCenter to the estate. In response to Lee's contention that no evidence supports the finding, appellees argue that "there was ample evidence that Mr. Lee used the proceeds of this loan to fund his efforts to hide the conspiracy from the heirs of the estate and therefore the taking of the loan proximately caused damage to the Estate." In support of this proposition, appellees point to evidence the loan was needed, in part, to pay the fees of the attorneys Lee retained to probate the estate, who the jury found were part of the civil conspiracy.

Cynthia Hersey and other witnesses testified to numerous requests she made seeking information about the operations of GeoCenter and the status of matters involving the estate. The record also con-

---

**17.** Tribolet was prepared to testify concerning valuation of GeoCenter, but the trial court granted Lee's motion to exclude that testimony, a ruling not challenged on appeal.

**18.** Evidence showed the loaned funds were advanced in October 1998.

tains letters to Lee in which she made such requests, and the responses, which normally came from Lee's attorneys. Cynthia Hersey contended that Lee was hiding information from her. Even when that evidence is viewed most favorably to appellees, and even assuming that Lee's "efforts to hide the conspiracy" can be said to be a result of the loan, it is not apparent from the evidence how the trustee was damaged by that conduct. Appellees do not point to any injury to the trustee.

Appellees also contend the interest that accrued on the loan constituted damages to the estate supporting the jury's finding. As noted, the loan was repaid through the redemption of some of the estate's shares of GeoCenter, and the documentary evidence shows that the accrued interest was included in the calculation of the number of shares required for the redemption. The estate owned 100% of the outstanding shares of GeoCenter before and after the redemption. There is no evidence of damage to the trustee from the interest charged on the loan.

Having reviewed the record in its entirety, we can find no evidence supporting the jury's finding that the $150,000 loan resulted in damages to the trustee. *Kindred*, 650 S.W.2d at 63; *Houston Mercantile*, 930 S.W.2d at 246–49. We also sustain Lee's third issue with regard to jury question 4(2).

### Cross–Appeal

■■■■ Having sustained appellant's third issue on appeal on legal sufficiency grounds, we now turn to appellees/cross-appellants' cross-brief on appeal. In their cross-brief, appellees/cross-appellants raise a single issue contending there is legally sufficient evidence to support the jury's answer to question 4(3). In response to question 4(3), the jury awarded appellees $500,000 for "any other damage to the assets of the Estate." The jury found the damages were first suffered on April 9, 1998, the day following Hersey's death. The trial court disregarded the jury's answer and entered its judgment *non obstante veredicto*. A JNOV is proper when a directed verdict would have been proper. TEX. R. CIV. P. 301; *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex.1991). A directed verdict for a defendant is appropriate when the plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery or when the evidence conclusively establishes a defense to the plaintiff's cause of action. *Prudential Ins. Co. of America v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000).

■■■■ We review a JNOV under a no evidence standard of review. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988). As such, the evidence is viewed in the light most favorable to the jury's findings, disregarding all evidence and inferences to the contrary. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex.2003). If more than a scintilla supports the jury's findings, it must be upheld and the judgment notwithstanding the verdict should be reversed. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex.1990). More than a scintilla exists when the evidence supporting the finding rises to a level that would enable reasonable minds to differ in their conclusions. *See Nat'l Convenience Stores, Inc. v. Matherne*, 987 S.W.2d 145, 148 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (stating rule in context of review of denial of JNOV).

In support of the jury's finding as to question 4(3), appellees/cross-appellants again point to the evidence "that Lee ... cancelled a ... bonus to be paid to the Estate and instead paid a huge amount of taxes to the IRS." We have stated our conclusion that corporate income tax liabil-

ity resulting from a failure to distribute the $475,000 authorized by GeoCenter's board of directors to the estate does not support a finding of damages for a decrease in the value of the corporation's shares. We similarly find that the failure to distribute the funds to the estate and payment of income tax by the corporation are not evidence of damages suffered by the trustee from "any other damage to the assets of the Estate." Nothing shows that GeoCenter would have been better off if it had distributed $475,000 to the estate, and nothing shows that any other asset of the estate was harmed by the corporation's retention of the funds. Nor is there evidence that the tax treatment would have been more favorable had the funds been distributed. The payment of taxes by GeoCenter amounts to no more than a scintilla of evidence of damage to the assets of the estate. *Nat'l Convenience Stores*, 987 S.W.2d at 148.

Appellees/cross-appellants also direct us again to the evidence of excessive salaries paid to Risinger–Hersey and showing "how this money could have been used by Lee to fund the Estate through a dividend or bonus." They cite a portion of the record in which Lee was questioned about the estate's ability to repay the GeoCenter loan if it had more cash. We have stated our conclusion there is no evidence the trustee was damaged by the loan. We similarly find the evidence to which appellees/cross-appellants refer is not probative of other damage to the assets of the estate.

We find no probative evidence in this record to support the $500,000 damages awarded the trustee by the jury for other damage to assets of the estate.[19] The trial court did not err in its decision to disre-

gard the jury's answer to question 4(3). We overrule appellees/cross-appellants' issue on appeal.

### Issue Six—Exemplary Damages

Lee's sixth issue on appeal complains of the jury's award of punitive damages. Recovery of actual damages is a prerequisite to the receipt of exemplary damages. *Saenz v. Fidelity & Guaranty Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex.1996); *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.*, 793 S.W.2d 660, 667 (Tex.1990). Our sustaining of Lee's issues challenging the award of actual damages requires that we sustain his sixth issue also.

### Conclusion

Our resolution of the foregoing issues disposes of the appeal, so we do not address Lee's remaining issues. We reverse the trial court's judgment with regard to jury charge questions 4(1) and 4(2). We affirm the trial court's judgment with regard to jury charge question 4(3). We reverse the award of punitive damages and render judgment that appellees/cross-appellants Justin Hersey, Travis J. Hersey, and the Frank J. Hersey Family Trust take nothing.

---

**19.** Appellees/cross-appellants further assert there is "evidence that the Trustee had to expend approximately $100,000 to defend the common law marriage suit that Lee failed to properly defend in breach of his fiduciary duties." The record does not support this assertion.